IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEITH DARNELL KELLY,

    Plaintiff,

v.

RN BURNICE SWAN, et al.,

    Defendants.

Civil Action No.: BAH-23-2432

**MEMORANDUM OPINION**

Self-represented Plaintiff Keith Darnell Kelly, an inmate at Western Correctional Institution ("WCI") in Cumberland, Maryland, filed this civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his medical needs and retaliated against him for filing grievances. ECF 1. Currently pending is Defendants Warden Ronald Weber and Assistant Warden Bradley Butler's Motion to Dismiss, or Alternatively, for Summary Judgment. ECF 28. Plaintiff opposes the Motion. ECF 34. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated below, Defendants' Motion is GRANTED. The remaining defendants, ("the medical defendants") will be directed to file a status report with suggested deadlines for discovery and dispositive motions.

**I. BACKGROUND**

    **A. Factual Allegations**

Plaintiff filed this case against Defendants Ronald Weber, Warden at WCI, and Bradley Butler, Assistant Warden at WCI (the "correctional defendants")[1] as well as numerous medical

---

[1] Plaintiff also named Administrative Remedy Procedure ("ARP") coordinator Alicia Cartwright. ECF 1 at 5. Service was not accepted for Cartwright, however, because she no longer works for the Department of Public Safety and Correctional Services ("DPSCS"). ECF 9. Plaintiff fails to

staff (the "medical defendants") alleging that they failed to provide adequate medical care for his deep vein thrombosis ("DVT") over the course of two years in violation of his Eighth Amendment rights. ECF 1.[2] Plaintiff alleges that in August and September of 2021, he was denied medical treatment for several weeks as his leg swelled and began to turn black. ECF 1 at 9-26, 28-35. On September 8, 2021, he finally saw a doctor who immediately sent him to the emergency room where he was diagnosed with DVT. *Id.* at 36-38. Thereafter, Plaintiff alleges that he was repeatedly denied medical care for DVT over the course of the next two years. *See generally id.* at 38-42 and ECF 1-1. He alleges that nursing staff regularly failed to administer his medication and conduct required blood tests resulting in repeated trips to the emergency room. ECF 1 at 8-9; ECF 1-1 at 8, 35. He alleges that nursing staff accused him of being non-compliant with his medication when they failed to provide it and that they retaliated against him for filing ARP's by further denying him care. ECF 1 at 15; ECF 1-1 at 17. Plaintiff filed numerous ARP's regarding his medical issues, several of which were found meritorious and meritorious in part. ECF 5-1. Defendant Assistant Warden Butler signed and responded to many of these ARP's. *Id.* at 14, 18, 20, 22, 25, 28, 30, 34, 35, 28, 42, 44, 57.

---

state a claim against Cartwright as he does not allege that she was involved in any violation of his rights. She is listed as a defendant, but the only factual allegation made against her is that Plaintiff asked her to photograph his injuries and did not receive a response. ECF 1 at 18; 1-1 at 43. As such, he fails to state a claim against her, and the Complaint will be dismissed against her pursuant to 28 U.S.C. 1915A(b).

[2] The Complaint is a 96-page iteration of Plaintiff's medical history from August 2021 through August 2023. *Id.* Plaintiff supplemented his Complaint with an additional 77 pages of documents, largely consisting of copies of Administrative Remedy Procedure ("ARP") grievances and responses. ECF 5.

2

### B. Correctional Defendants' Response

Warden Weber and Assistant Warden Butler move to dismiss the Complaint, arguing that they are immune from suit in their official capacities pursuant to the Eleventh Amendment and that Plaintiff fails to state a claim for § 1983 liability because he does not allege either personal participation or supervisory liability. ECF 28-1 at 10-15. Alternatively, Defendants argue that summary judgment should be granted in their favor because the evidence shows they were not deliberately indifferent to Plaintiff's serious medical need. *Id.* at 15-16.

In addition to a Memorandum of Law in support of the Motion, Warden Weber provided a declaration attesting that he has "no personal involvement in the provision of medical care to any WCI inmate, authority to make decisions concerning any inmate's medical care, or authority to order or recommend the contractor's staff to perform any particular medical procedure, prescribe any medication or render any particular treatment." ECF 28-3 at ¶ 2. Assistant Warden Butler's declaration makes a nearly identical statement. ECF 28-4 at ¶ 2. Assistant Warden Butler also explains that inmates' ARP's regarding medical care are shared with medical staff and management and discussed at monthly meetings, *id.* at ¶ 5, and he further attests that "[w]hen responding to WCI incarcerated individuals' complaints about the medical care provided to them, my staff and I rely on the reports, assessments and judgments of the contractor's trained medical staff to prepare any response for my signature." ECF 28-4 at ¶¶ 4-5. In addition, he declares that ""[t]hough correctional personnel like myself may be made aware of incarcerated individuals' grievances, those grievances are related to medical personnel for them to address and/or remedy as appropriate." *Id.* at ¶ 6. Both Warden Weber and Assistant Warden Butler attest that they "have not interfered with, hindered, or delayed medical treatment or care to [Plaintiff]." ECF 28-3 at 5 and 28-4 at ¶ 6.

3

Defendants also submitted records of Plaintiff's ARP's and responses as well as the minutes of monthly medical meetings for the Cumberland Correctional Complex, which includes WCI. ECF 28-6 and 28-7.

## II. LEGAL STANDARDS

Defendants argue that the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), or, alternatively, that summary judgment should be granted in their favor pursuant to Fed. R. Civ. P. 56. *See* ECF 13-1. A motion to dismiss styled in the alternative as a motion for summary judgment implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd* 684 F.3d 462 (4th Cir. 2012). Conversion of a motion to dismiss to one for summary judgment is permissible where a plaintiff has notice that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When a movant expressly captions its motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur as the Court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261; *see also* Willey v. Bd. of Educ. of St. Mary's Cnty., 557 F. Supp. 3d 645, 657 (D. Md. 2021) ("Notably, 'the Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion.'" (quoting *Ridgell v. Astrue*, Civ. No. DKC-10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012))).

Because Defendants filed their motions as motions to dismiss or, in the alternative, for summary judgment, Plaintiff was on notice that the Court could treat the motions as ones for summary judgment and rule on that basis. Accordingly, the Court will review Plaintiff's claims

4

against Defendants under the Rule 56(a) standard and will consider the exhibits filed in support of Defendants' Motion where appropriate.

Rule 56 provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255) (second alteration in original). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

The Court is mindful that Plaintiff is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean that a court can "ignore an obvious failure to allege facts setting forth a plausible claim for relief." *Sheehan v. Saoud*, 650 F. App'x 143, 152 (4th Cir. 2016) (citing *Weller v. Department*

*of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990)). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

## III. DISCUSSION

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834–38 (1994); *see also Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King*, 825 F.3d at 218; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating

6

treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see, e.g.*, *Scinto*, 841 F.3d at 228 (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839–40. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter ... becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is

premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Plaintiff clearly alleges that he suffered from a serious medical condition, which Defendants do not directly refute. *See* ECF 28-1 at 16. Based on the website referenced by Defendants, DVT is a serious medical condition in which a blood clot develops in the deep veins causing swelling, pain, warmth, and discoloration. ECF 28-1 at n.1.[3] The treatment includes medication, compression stockings, and sometimes surgery. *Id.* DVT can lead to a pulmonary embolism in which part of the clot breaks off and travels to the lungs, which constitutes a medical emergency and can be fatal. *Id.* The condition can become a chronic illness. *Id.* In his Complaint, Plaintiff alleges that in August and September of 2021, his leg was increasingly swollen, painful, and discolored, and that he was ultimately diagnosed with DVT after being taken to the emergency room on September 8, 2021. ECF 1 at 35. For the following two years, he was treated with

---

[3] U.S. Centers for Disease Control and Prevention, *Venous Thromboembolism (Blood Clots)*, https://www.cdc.gov/bloodclots/about/?CDC_AAref_Val=https://www.cdc.gov/ncbddd/dvt/facts.html (last visited March 5, 2025).

8

medication and compression stockings, but alleges that he did not consistently receive necessary treatment resulting in returns to the emergency room. ECF 1 and 1-1.

Plaintiff alleges that Warden Weber and Assistant Warden Butler are each "legally responsible for the operation of WCI and for the overall welfare of all the inmates in the prison." ECF 1 at 6. Plaintiff alleges that "prison officials" had "clear knowledge" of his "obvious serious medical needs" but that they failed to "go[] beyond the advice of the nurses to get Plaintiff medical care." *Id.* at 7. He states that on September 2, 2021, he wrote to the Wardens as well as other prison officials regarding his swollen and painful leg. *Id.* at 18.

### A. Warden Weber

Nothing in the record demonstrates that Warden Weber personally participated in the alleged denial of medical care to Plaintiff or that he was aware of Plaintiff's serious medical needs. While Plaintiff alleges that he wrote to "the Wardens" about his medical problems, Plaintiff does not provide any specifics regarding this correspondence, and there is nothing in the record to indicate that Warden Weber received it. Furthermore, Warden Weber attests that he has no authority to participate in Plaintiff's medical care and no authority to dictate the medical care providers' actions. Finally, Plaintiff does not allege that Warden Weber is liable as a supervisor over any prison official who violated Plaintiff's rights. As such, Warden Weber is entitled to summary judgment on Plaintiff's medical care claims against him. *See Campbell v. Warden*, Civ. No. GLR-22-1893, 2023 WL 5750284, at *14 (D. Md. Sept. 6, 2023) (granting summary judgment to a prison warden defendant when a Plaintiff failed to allege that the warden was "personally involved in or otherwise aware of the decisions regarding the provision of medical care"); *Collins v. Williams*, No. CV 6:18-1491-RMG-KFM, 2019 WL 4776748, at *4 (D.S.C. Aug. 16, 2019),

9

report and recommendation adopted, No. 6:18-CV-01491-RMG, 2019 WL 4751718 (D.S.C. Sept. 27, 2019) (same).

### B. Assistant Warden Butler

The evidence shows that Assistant Warden Butler knew about Plaintiff's DVT by way of his responses to multiple ARP's Plaintiff filed regarding his inadequate medical treatment. ECF 5-1 at 3, 9, 14, 18, 20, 22, 25, 28, 30, 34, 35, 38, 42, 44, and 57. However, the mere receipt or denial of Plaintiff's grievances does not alone impose liability. *Whitington v. Ortiz*, 307 F. App'x 179, 193 (10th Cir. 2009) (unpublished); *Larson v. Meek*, 240 F. App'x 777, 780 (10th Cir. 2007) (unpublished). Assistant Warden Butler declares that he "rel[ies] on the reports, assessments and judgments of the contractor's trained medical staff to prepare any response [to the ARP's]." ECF 28-4 at ¶4. His responses to each of Plaintiff's ARP's that were found meritorious (or meritorious in part) stated that while Plaintiff missed medication doses or blood monitoring on certain occasions, the treatment had been reinstated. ECF 5-1 at 9, 18, 22, 28, 30, 38, and 42. Even assuming the missed medication and missed blood monitoring created a serious medical need that required immediate attention, Assistant Warden Butler, who is not a licensed physician or health care provider and who has no authority over inmates' medical care or responsibility for monitoring the contractor's provision of medical care, was not in a position to know about the urgency of that medical need or take any action based solely on these ARP's and the responses prepared for him by the medical contractor.[4]  Furthermore, Plaintiff does not allege that Assistant Warden Butler

---

[4] The evidence includes copies of the minutes of monthly medical meetings, at which problems with medication distribution and lack of follow-up to ARPs was discussed. *See e.g.*, ECF 28-7 at 13 ("drug cards" not being used properly; follow through on ARP's is not occurring); 68 (reminder to be specific in responses to ARP's to avoid complaints that "nothing is being done"; 69 (nurses not properly distributing medication; ARP's not being resolved); 76 (ARP's not being resolved); 84 (medications not being renewed, including for some patients with seizure disorders; patients are "being given a hard time" about non-compliance with medication when they are not receiving

supervised anyone who violated his rights, knew of such violation, and failed to act. As such, Assistant Warden Butler is entitled to summary judgment.

### C. Eleventh Amendment

Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from citizen suits in federal court absent state consent or Congressional action. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-204(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Accordingly, Warden Weber and Assistant Warden Butler are immune from suit for actions taken in their official capacities and such claims must be dismissed.

### IV. CONCLUSION

Warden Weber and Assistant Warden Butler's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment is **GRANTED**. All claims against Defendants in their official capacity are dismissed. Summary judgment is otherwise granted in favor of Defendants. Plaintiff's claim against ARP Coordinator Alicia Cartwright is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A(b). The Medical Defendants will be directed to file a status report

---

them); 85 (80% of appeals of ARP's are for no follow through). Assistant Warden Butler was present at one meeting at which medication mismanagement and lack of ARP follow through were addressed, ECF 28-7 at 84-86, but there is nothing in the records to suggest that Plaintiff's case was discussed at this meeting or at any other meeting.

11

within 30 days of the date of this Order suggesting a discovery deadline and dispositive motions deadline.

A separate Order follows.


March 6, 2025                                                    /s/
Date                                                     Brendan A. Hurson
                                                         United States District Judge\