**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**CHAMBERS OF**
**J. Mark Coulson**
**UNITED STATES MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**P: (410) 962-4953 | F: (410) 962-2985**
**mdd_jmcchambers@mdd.uscourts.gov**

October 7, 2026

LETTER ORDER AND OPINION TO COUNSEL

RE: *Kelly v. Mace, et al.*
Civil No. 1:23-cv-02432-BAH

Dear Counsel:

Plaintiff, Keith Kelly ("Plaintiff"), an inmate at Western Correctional Institution ("WCI") in Cumberland, Maryland, brought this case alleging that Defendants were deliberately indifferent to his medical needs while he was incarcerated and retaliated against him for filing grievances. (ECF No. 62).[1] Currently before the Court is a discovery dispute concerning Defendants' responses and objections to Plaintiff's discovery requests. (ECF Nos. 98, 99, 102). The Court has carefully considered the parties' letters summarizing their respective positions. The issues have been fully briefed (ECF Nos. 98, 99, 102), and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, the Court shall GRANT in part and DENY in part Plaintiff's requested relief.

## I. Background

The present litigation arises from Plaintiff's allegations that he did not receive adequate medical care while incarcerated at WCI where he has been incarcerated since 2021. (ECF No. 62 at 3).[2] Plaintiff claims that Defendants' unlawful actions "under the color of state law . . . resulted in the violation of Plaintiff's rights under the United States Constitution, the Constitution of Marland, and Maryland Common law." (ECF No. 62 at 2). Plaintiff brings this suit against the following Defendants: Centurion of Maryland, LLC ("Centurion of Maryland"), Centurion, LLC ("Centurion Health"), Centurion Group, Inc., Burnice Mace ("Defendant Mace"), Jannette Clark ("Defendant Clark"), Amy Kelly ("Defendant Kelly"), Karen Coleman ("Defendant Coleman"), Asreashegn Getachew, M.D. ("Defendant Asreashegn"), Peter LoPresti, D.O. ("Defendant LoPresti"), and Richard Schlottman, M.D. ("Defendant Schlottman") (collectively the "Defendants"). *Id.* at 3-5.[3]

---

[1] The Court notes that Plaintiff's first Complaint was filed on September 5, 2023 (ECF No.1), but the operative pleading is Plaintiff's Amended Complaint filed on December 19, 2026. (ECF No. 62).

[2] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. If there are none, the Court is referring to the page number of the PDF.

[3] Defendants Clark, Mace, Kelly, and Coleman all provided medical services at WCI. (ECF No. 63 at 4-5). Defendant Asreashegn was the "Regional Medical Director for the Western Region for Corizon" (ECF No. 63 at 5). Defendant

Plaintiff avers that while incarcerated at WCI, he did not receive adequate medical care for his deep vein thrombosis. *Id.* at 6. Specifically, Plaintiff claims that Defendants "routinely failed to provide adequate medical care, failed to adhere to [his] physicians' prescribed treatment plans, failed to properly monitor [his] condition, and failed to provide [his] his medication." *Id.* He claims that in violation of DPSCS policy, "individual medical providers repeatedly failed to respond to [his] sick calls, refused to have him be seen by a medical doctor, cancelled his medical appointments, and denied him his prescribed medication." *Id.* at 21.

Importantly, at the time Plaintiff was first incarcerated at WCI, Corizon Health, Inc., commonly referred to as YesCare ("YesCare") contracted with DPSCS to provide medical services in Maryland's correctional facilities. (ECF No. 96 at 6). Plaintiff alleges that "in the summer of 2024, [Centurion of Maryland] entered into a contract with the State of Maryland to provide medical and mental health care services at correctional facilities in the State of Maryland, including WCI." (ECF No. 62 at 3). He claims that Centurion Health is the parent company of Centurion of Maryland "and other state-level subsidiaries that contract to provide medical services in correctional facilities." *Id.* at 3.

Plaintiff not only alleges that the Defendants denied him access to adequate medical care, but he also claims that the denial of adequate medical care was part of a pattern and practice at WCI. *Id.* at 29. Specifically, Plaintiff claims that Centurion of Maryland, Centurion Health, and Centurion Group, Inc. (collectively the "Centurion Defendants") engaged in "a pattern and practice of knowingly failing to comply with DPSCS's standards through understaffing, which has resulted in inadequate medical care and suffering to Mr. Kelly and others." *Id.* at 40.

Plaintiff's Amended Complaint asserts five counts against Defendants. Relevant to the present discovery dispute, Plaintiff brings the following claims: Count I (42 U.S.C. § 1983 claim) against Defendants Clark, Coleman, Getachew, Kelley, LoPresti, Mace, and Schlottman alleging an unconstitutional denial and delay of necessary medical care;[4] Count III (*Monell* claim) against Defendants Centurion of Maryland, Centurion Health, and Centurion Group, Inc., alleging an unconstitutional policy or custom of understaffing WCI's Medical Unit;[5] and Count V (42 U.S.C. § 1983 claim) against Defendant Clark alleging retaliation in violation of Plaintiff's constitutionally protected speech. *Id.* at 43-50.

On August 20, 2026, Defendants Clark, Coleman, Getachew, Kelley, and Mace (collectively the "YesCare Defendants") filed a Motion to Stay due to YesCare's "petition for

---

LoPresti was "Centurion Health's Statewide Medical Director for the State of Maryland." *Id.* Defendant Schlottman was "Centurion Health's Regional Medical Director in Maryland." *Id.*

[4] Plaintiff also brings Count II against the same group of Defendants for allegedly violating Article 25 of the Maryland Declaration of Rights. (ECF No. 63 at 44). For the purposes of ruling on the present discovery dispute, the Court will consider Counts I and II together in determining Defendants' discovery obligations. *See Doe v. Anne Arundel Cnty.*, No. 1:23-CV-03451-JRR, 2025 WL 675059, at *6 (D. Md. Mar. 3, 2025).

[5] Plaintiff also brings Count IV against the same group of Defendants for allegedly violating Article 25 of the Maryland Declaration of Rights. (ECF No. 26 at 47). For the purposes of ruling on the present discovery dispute, the Court need not separately consider Counts I and II in determining Defendants' discovery obligations. *See Talley v. Anne Arundel Cty. Md.*, No. CV RDB-21-347, 2021 WL 4244759, at *13 (D. Md. Sept. 17, 2021) ("Longtin claims are essentially Maryland's version of *Monell* Claims."); *Grim v. Baltimore Police Dep't*, No. ELH-18-3864, 2019 WL 5865561, at *8 (D. Md. Nov. 8, 2019).

relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court or the Middle District of Florida in Case No. 2:26-bk-01087." (ECF No. 94 at 2). The YesCare Defendants were employed by YesCare through July 31, 2024, and by Centurion of Maryland beginning August 1, 2024. *Id.* at 1. The Motion to Stay explains that after Plaintiff's Amended Complaint, YesCare filed a bankruptcy petition which the YesCare Defendants argue materially affects the litigation of this case. *Id.* at 2-3. They urge that some of "the claims against them arise from medical care allegedly provided through YesCare and depend on the same records, policies, procedures, staffing decisions, and institutional practices that underlie Plaintiff's claims against the debtor." *Id.* at 3. Additionally, the Motion to Stay states that "insurance may no longer be available, and that YesCare is unable to pay their defense expenses and any settlement or judgment against them." *Id.* at 5. Plaintiff opposed the Motion to Stay on September 3, 2026. (ECF No. 96).

While the Motion to Stay was pending, the Centurion Defendants filed a joint letter with Plaintiff on September 9, 2026, formally raising the current discovery dispute. (ECF No. 98). Thereafter, Judge Hurson referred the case to the undersigned to resolve the pending dispute. (ECF No. 100). The parties submitted letters to the Court outlining their respective positions, which satisfied the requirements of the Court's Informal Discovery Memorandum. (ECF Nos. 99, 102). The parties indicate that they have conferred on several occasions but have been unable to resolve several discovery disputes, which the Court will explain in more detail below. (ECF No. 98).

## II. Legal Standard

"District courts enjoy nearly unfettered discretion to control the timing and scope of discovery." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 426 (4th Cir. 1996). As a result, "discovery rulings are generally not overturned on appeal 'absent a showing of clear abuse of discretion,'' which "will only be identified where discovery restrictions prevent a litigant from 'pursuing a litigation theory.'" *United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 323 (4th Cir. 2018). Federal Rule of Civil Procedure 26 provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). The party seeking discovery therefore carries the burden of establishing its relevancy and proportionality, at which point the burden shifts to the party resisting discovery to demonstrate why the discovery should not be permitted. *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 526 (D.S.C. 2018); *United Oil Co. v. Parts Ass'n*, 227 F.R.D. 404, 411 (D. Md. 2005).

Although Rule 26 does not define "relevance," it has been "broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'" *Revak v. Miller*, No. 7:18-CV-206-FL, 2020 WL 1164920, at *2 (E.D.N.C. Mar. 9, 2020) (other citations omitted); *see also Fish v. Air & Liquid Sys. Corp.*, GLR-16-496, 2017 WL 697663, at *2 (D. Md. Feb. 21, 2017). Whether a discovery request is proportional is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

## III. Analysis

The parties' joint letter identified disputes related to the Centurion Defendants' written discovery responses and a dispute concerning Plaintiff's 30(b)(6) and 30(b)(1) deposition notices. (ECF No. 98 at 1). The Court will address the parties' disagreements in turn below.

### A. Centurion of Maryland's Objections to Plaintiff's Requests for Production and Interrogatories

The parties identify several disputes regarding Plaintiff's Requests for Production of Documents ("RFPs") and Interrogatories. To determine the scope of discovery in this case, the Court must consider the requests in light of Plaintiff's claims. With respect to Plaintiff's § 1983 claim, he must demonstrate "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a 'person acting under the color of state law.'" *Bost v. Wexford Health Sources, Inc.*, No. CV ELH-15-3278, 2020 WL 1890506, at *9 (D. Md. Apr. 15, 2020). "Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct[,]" meaning "there is no respondeat superior liability under § 1983." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676, (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Turning to Plaintiff's *Monell* claim, "the United States Supreme Court held that local government bodies may be held liable under 42 U.S.C. § 1983 if the execution or implementation of an official 'policy or custom' inflicts the plaintiff's constitutional injury." *Talley v. Anne Arundel Cnty., Maryland*, No. CV RDB-21-347, 2021 WL 4244759, at *13 (D. Md. Sept. 17, 2021) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). Private prison health care providers operating under the color of state law are subject to *Monell* liability. *Bost*, 2020 WL 1890506, at *10. The two components of a § 1983 *Monell* claim are "(1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights." *Id.* An official policy can be demonstrated by the existence of "(1) an express policy; (2) certain affirmative decisions of policymaking officials; and (3) a widespread practice that is so engrained it constitutes a custom, including omissions made by policymaking officials that 'manifest deliberate indifference to the rights of citizens.'" *Id.* at *11 (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).

Here, Plaintiff alleges that "Centurion of Maryland maintained an unofficial policy or custom of understaffing at WCI, which it knew or should have known resulted in pattern or practice of ignoring sick calls, denying medication administration, and denying treatment to incarcerated individuals without consequences." (ECF No. 62 at 45). Taking Plaintiff's allegations into account, the Court recognizes that the discovery involved in Plaintiff's *Monell* claim will reach well beyond Plaintiff's § 1983 claims because *Monell* liability requires evidence of victims other than Plaintiff. *See Hall v. Baltimore Police Dep't*, No. CV RDB-24-1137, 2025 WL 918220, at *7 (D. Md. Mar.

26, 2025). While the Court recognizes the broad scope of discovery involved in this case, Plaintiff's requests must still be sufficiently tailored as a *Monell* Plaintiff is not entitled to limitless discovery. *See Bost*, 2020 WL 1890506, at *8.

Before addressing Plaintiff's requests, the Court first rejects Plaintiff's claims that the Centurion Defendants have waived any right to object to Plaintiff's discovery requests. Such a finding would impose an unnecessarily harsh result on the Centurion Defendants given the extent of the delay in responding to Plaintiff's requests. *See Hall v. Sullivan*, 231 F.R.D. 468, 474 (D. Md. 2005) ("[A] court has broad discretion to decide on a case by case basis whether waiver is appropriate."). Additionally, even if Defendants were deemed to have waived such objections, Federal Rules impose a duty of all parties and this Court to construe, administer and employ the Federal Rules "to secure the just, speedy and inexpensive determination of every action and proceeding." Fed. R. Civ. Proc. 1.

The Court further notes that the relevant temporal period of the requests is inherently limited due to Centurion of Maryland's contractual relationship with the State of Maryland. Although Plaintiff does not tailor its requests accordingly, Plaintiff's claims do not require Centurion of Maryland to produce information before it entered into the DPSCS Healthcare Contract with the State of Maryland to provide medical services to prisons across the state. Therefore, to the extent any requests seek information predating August 1, 2024, such information falls outside the scope of permissible discovery. Additionally, Centurion of Maryland objects to several of Plaintiff's requests to the extent Plaintiff seeks information from facilities other than WCI. Plaintiff does, however, allege in his complaint that several policies of Centurion of Maryland are similar to those of Corizon, including on a statewide level. In the *Monell* context, information from other facilities operated by Centurion of Maryland may well be relevant to determine whether it had the alleged policy or custom of understaffing, and the Court declines to uniformly impose Centurion of Maryland's requested limitation. *See Shields v. Prince George's Cnty*., 2016 U.S. Dist. LEXIS 118924, at *26-27 (D. Md. Sept. 1, 2016). The Court can envision that correctional facilities are not a monolith, and that care and staffing decisions might have meaningful differences based on the size and population of the facility, geographic location within the state (such as proximity to a metropolitan area) and security level. In this vein, the Court will review each request and interrogatory with Centurion of Maryland's objection in mind to see if statewide information is sufficiently relevant so as to justify the increased burden that statewide production imposes. Additionally, Centurion of Maryland is free to note important differences between facilities, if any, in their discovery responses.

### i. Request for Production Nos. 4-5 and Interrogatory Nos. 1(a) and 7

Several of Plaintiff's requests seek information regarding Centurion of Maryland's corporate structure and allocation of roles in providing medical care in the State of Maryland. Plaintiff's RFP No. 4 seeks documents evidencing Centurion of Maryland's "corporate organization, including the relationships among Centurion, LLC, Centurion Group, Inc., Centurion of Maryland, LLC, and any other corporate affiliates." (ECF No. 102-1 at 6). Plaintiff's RFP No.

5 seeks documents demonstrating the "allocation of roles and responsibilities for the provision of medical care to incarcerated persons in the State of Maryland." *Id.* at 6-7. Finally, Interrogatory No. 1 seeks the individuals responsible for drafting policies related to the provision of medical care in Maryland. (ECF No. 102-3 at 5). Centurion of Maryland objects on several bases, including that the requested information is overbroad, unduly burdensome, and seeks confidential or proprietary business information.[6] (ECF Nos. 102-1 at 6-7, 102-3 at 7-9). *Id.*

The Court finds that such a request is relevant to the extent it may identify the respective roles of the entities and the manner which Centurion of Maryland operates with respect to the provision of medical care at prisons in the State of Maryland, including how policies and practices affecting medical care are determined and implemented. At the same time, Plaintiff's claims do not render Centurion of Maryland's general organizational structure or relationships at issue.

Therefore, Plaintiff's requested relief is GRANTED in part and DENIED in part as it relates to RFPs Nos. 4-5 and Interrogatory Nos. 1(a) and 7 such that Centurion of Maryland shall produce a response to the extent Plaintiff seeks information regarding both the corporate and organizational structure and roles and responsibilities in the provision of medical care in the State of Maryland. To the extent the requests seek information regarding unrelated corporate affiliates or organizational functions, the requests are overbroad.

**ii. Request for Production No. 10**

Plaintiff's RFP No. 10 requests the DPSCS Healthcare Contract and all related agreements. (ECF No. 102-1 at 9). Plaintiff states that to date, Centurion of Maryland has only produced portions of the contract. (ECF No. 102 at 2). Centurion of Maryland objects on several grounds, including, among others that the request "seeks confidential, proprietary and commercially sensitive business information." (ECF No. 102-1 at 9).

The Court disagrees with Centurion of Maryland, as the DPSCS Healthcare contract is relevant to Plaintiff's claims. The contract governs Centurion of Maryland's provision of medical care to incarcerated persons in the State and the framework set out in the contract will demonstrate the responsibilities assumed by Centurion of Maryland as contemplated by the parties.

Therefore, Plaintiff's requested relief is GRANTED as it relates to RFP No. 10.

**iii. Requests for Production Nos. 12-14 and Interrogatory 1(b)**

Plaintiff's RFPs Nos. 12 and 13 request documents related to Centurion of Maryland's compliance with the DPSCS Healthcare Contract, state and federal law, and audits related to the

---

[6] To the extent Centurion of Maryland objects to Plaintiff's requests on the basis that they seek proprietary or commercially sensitive business information, both in these requests and ones to follow, the Court finds no basis for limiting discovery on this ground. Plaintiff may not unilaterally withhold information on this basis as there is "no blanket privilege for proprietary information or trade secrets." *Paull Assocs. Realty, LLC v. Lexington Ins. Co.*, No. 5:13-CV-80, 2014 WL 12596397, at *3 (N.D.W. Va. Jan. 9, 2014). In addition, Centurion of Maryland has agreed to a Stipulated Confidentiality Order on June 30, 2026, which Centurion of Maryland may use to protect its alleged confidential and proprietary information. (ECF No. 89). If Centurion of Maryland seeks modification of this order, it should work with Plaintiff and present a modified order for the Court's consideration.

provision of medical care of incarcerated persons. (ECF No. 102-1 at 10-11). RFP No. 14 also requests communications with the State of Maryland concerning the DPSCS Healthcare Contract. *Id.* at 11. Finally, Interrogatory No. 1(b) asks for a description of the individuals or entities responsible for compliance with Centurion of Maryland's obligations under the DPSCS Healthcare Contract and applicable federal or state law. (ECF No. 102-3 at 5). Centurion of Maryland objects arguing, among other things, that the requests is vague, overbroad, and unduly burdensome. (ECF Nos. 102-1 at 11, 102-3 at 7-9). Given that each request relates to Centurion of Maryland's performance in providing correctional healthcare under the DPSCS contract and relevant law, the Court will consider them together.

The Court finds that the requests are overbroad insofar as they seek information that is not relevant or proportional to Plaintiff's allegations of understaffing. Plaintiff's claims do not require production of all Centurion of Maryland's contractual performance or compliance with state and federal laws. Instead, only materials that bear directly on Plaintiff's alleged deficiency fall within Rule 26(b)(1). The Court recognizes that Plaintiff must ultimately establish that inadequate staffing was a policy or practice rather than an isolated occurrence. That being said, Plaintiff's sweeping requests are not sufficiently tailored to information that may be relevant to the allegations pled in the Amended Complaint.

Therefore, Plaintiff's requested relief is GRANTED in part and DENIED in part as it relates to RFPs Nos. 12-14 and Interrogatory 1(b) such that Centurion of Maryland shall produce a response to the extent they possess documents of audits, reviews, compliance material, communications, meeting minutes, or other responsive documents bearing on the alleged understaffing. To the extent the request encompass Centurion of Maryland's compliance with other legal or contractual requirements, they exceed the scope of discovery.

**iv. Request for Production No. 16 and Interrogatory No. 1(c)-(d)**

In RFP No. 16, Plaintiff requests all documents related to any effort by Centurion of Maryland to "lower, control, manage, budget, forecast, or optimize" costs related to the provision of medical care in the state of Maryland. (ECF No. 102-1 at 12). Interrogatory No. 1(c) requests that Centurion of Maryland identify the management of Centurion of Maryland's budgeting and planning of its "revenue, costs, and profitability under the DSCS Healthcare Contract" and provision of medical care to incarcerated persons in the State of Maryland. (ECF No. 102-3 at 5). Interrogatory No. 1(d) asks Centurion of Maryland to identify those responsible for "policymaking, planning budgeting, forecasting, reporting, or analysis of Your staffing levels or the availability of medical providers" related to the provision of medical care in the State of Maryland. *Id.* at 6. Centurion of Maryland objects, claiming that such information is proprietary and not proportional to the needs of the case. (ECF Nos. 102-3 at 5, 102-3 at 7-9).

The Court agrees with Centurion of Maryland's argument that RFP No. 16 and Interrogatory No. 1(c) are overbroad and not proportional to the needs of the case. The Court finds that a majority the information requested lacks relevance to the lawsuit and would not show that Centurion of Maryland has a policy, practice, or custom of understaffing to reduce costs and increase profits, meaning this request would turn into an impermissible fishing expedition. The slight relevance of these documents is outweighed by the burden of producing a substantial amount of irrelevant information. However, the Court finds that Interrogatory No. 1(d) is sufficiently tailored to the needs of this case. Because Plaintiff alleges a policy of inadequate medical staffing,

the identity of those responsible for staffing decisions may bear on the scope of the alleged practice.

Therefore, Plaintiff's requested relief is DENIED as it relates to RFP No. 16 and Interrogatory No. 1(c). Plaintiff's requested relief is GRANTED as it relates to Interrogatory No. 1(d).

**v. Request for Production No. 17 and Interrogatory No. 8**

Plaintiff's RFP No. 17 seeks "[a]ll Documents related to staffing levels or the availability of medical providers at facilities operated by MD DPSCS, including any plans, proposals, strategies, analyses, or policies." (ECF No. 102-1 at 12). Additionally, Interrogatory No. 8 requests staffing levels at each facility in Maryland where Centurion of Maryland provides medical care to incarcerated persons, including the number of vacant positions. (ECF No. 102-3 at 16). Centurion of Maryland objects and argues that Plaintiff's requests are unduly burdensome and overbroad given the allegations at issue in this matter. (ECF Nos. 102-1 at 12-13, 102-3 at 17-18).

Plaintiff's *Monell* claims is premised on allegations that Centurion of Maryland failed to maintain adequate medical staffing and such deficiencies contributed to his inadequate medical case. Because Plaintiff alleges a widespread practice rather than an isolated deficiency, the Court finds that information concerning medical staffing levels and provider availability is relevant to the existence or prevalence of the practice Plaintiff alleges. Such requests are limited to the provision of medical care in facilities operated by Centurion of Maryland in Maryland.

Therefore, Plaintiff's requested relief is GRANTED as it relates to RFP No. 18 and Interrogatory No. 8.

**vi. Request for Production No. 20**

Plaintiff's RFP No. 20 requests "[a] Documents relating to the Individual Defendants, including job descriptions, employment histories, salary and pay information, performance reviews, complaints (including ARPs), disciplinary measures, retraining, corrective actions, bonuses, incentives, awards, insurance coverage, or indemnity agreements." (ECF No. 102-1 at 14). Centurion of Maryland objects arguing that the requests are irrelevant to the clams at issue. *Id.*

The Court finds that the request, as written, is overbroad. Because Plaintiff asserts § 1983 claims against the several defendants, however, some of the requested information concerning their positions, responsibilities, and related conduct may be relevant to Plaintiff's claims. However, salary and pay information, employment history, bonuses, incentives, or awards are not relevant to Plaintiff's claims.

Therefore, Plaintiff's requested relief is GRANTED in part and DENIED in part such that Centurion of Maryland shall produce the individual defendants job descriptions, complaints, disciplinary measures, retraining, corrective actions, insurance coverage, and indemnity agreements. The request is otherwise denied to the extent it seeks employment histories, salary and pay information, bonuses, incentives, or awards. The production is limited to responsive documents while the individual defendants were employed by Centurion of Maryland.

**vii. Interrogatory No. 7**

Interrogatory No. 7 asks Centurion of Maryland to identify how it "ensure[s] the provision of adequate medical care by Centurion of Maryland and other state-level subsidiaries, including any relevant policies, procedures, and processes." (ECF No. 102-3 at 15). Centurion of Maryland objects, arguing that the request is vague, overly broad, and unduly burdensome. *Id.*

The Court agrees with Centurion of Maryland. Plaintiff's request for all policies and procedures regarding Centurion of Maryland's provision of medical care in the State of Maryland encompasses polices and procedures far beyond the alleged practice at issue. However, to the extent Plaintiff requests information regarding Centurion of Maryland's monitoring of staffing levels, such information falls within the scope of Rule 26(b)(1).

Therefore, Plaintiff's requested is GRANTED in part and DENIED in part as to Interrogatory No. 7 such that Centurion of Maryland insofar as it concerns to its monitoring and oversight of medical staffing.

**viii. Interrogatory No. 9**

Interrogatory No. 9 seeks the total number of sick call request received by Centurion of Maryland, the total number of patients who submitted sick call requests, and the "25th, 50th, 75th, and 90th, percentiles of the length of time it took" for Centurion of Maryland to respond to reach call request. (ECF No. 102-3 at 18). Centurion of Maryland objects on the basis that the request is overly board to the extent it seeks information for each facility in the State of Maryland. *Id.* at 19.

The Court disagrees with Centurion of Maryland. The requested information bears on Plaintiff's claims as he alleges that sick calls go unanswered as a result of inadequate staffing. Information on the frequency and timeliness of such requests concerns the alleged manifestation of the challenged practice, and activities of Centurion of Maryland across Maryland can be relevant to establish a pattern under *Monell. See Shields*, 2016 U.S. Dist. LEXIS 118924, at *26-27.

Therefore, Plaintiff's requested relief is GRANTED as it relates to Interrogatory No. 9.

**ix. Interrogatory No. 12**

Interrogatory No. 12 seeks information used by Centurion of Maryland to retrain or hire "the persons who provided medical care at WCI under YesCare." (ECF No. 102-3 at 21). Centurion of Maryland objects, arguing that the request is vague, overly broad, unduly burdensome, and seeks information relevant to the claims or defense at issue. *Id.*

The Court agrees Centurion of Maryland as its decisions in hiring or retaining the YesCare defendants has no bearing on Plaintiff's claims as he does not allege that any constitutional violation resulted from improper hiring or retention. Because the request is unrelated to the theories of liability in Plaintiff's complaint, the requested information is outside the scope of discovery.

Therefore, Plaintiff's requested relief is DENIED as it relates to Interrogatory No. 7.

**x. Interrogatory No. 13**

Interrogatory No. 13 asks Centurion of Maryland to "[i]dentify and describe all claims, demands, arbitrations, litigations threats of litigation, government audits, third-party audits, or investigations that" it or the individual defendants were involved in relating to the provision of medical care to incarcerated persons. (ECF No. 102-3 at 21). Centurion of Maryland argues that the requests seeks information irrelevant to the claims or defenses at issue in this litigation. *Id.* at 23.

As drafted, the interrogatory is far too broad as it encompasses materials well beyond the scope of Plaintiff's § 1983 and *Monell* claims. Prior actions involving correctional medical care likely concern conduct unrelated to the particular practice alleged by Plaintiff in this case. In addition, the Court recognizes that there are inherent challenges in providing medical care in a custodial setting. Additionally, there is often understandable tension and stress between incarcerated persons and those responsible for them. Consequently, there are no doubt frequent informal complaints and threatened claims regarding the adequacy of medical care. Limiting responsive information to formal litigation complaints balances Plaintiff's need for such claims to show a potential pattern with preventing an unnecessary burden on Centurion of Maryland.

Therefore, Plaintiff's requested relief is GRANTED in part and DENIED in part such that Interrogatory No. 13 is limited to formal litigation complaints concerning inadequate staffing in the provision of medical care at correctional facilities in Maryland since Centurion of Maryland acquired the DPSCS Healthcare Contract. The Court, however, makes clear that it does not require the production of privileged information.

**B. Centurion Health and Centurion Group Inc.'s Refusal to Respond to Discovery**

Plaintiff seeks discovery from the three Centurion Defendants (ECF No. 102 at 1-2) despite Counsel for the Centurion Defendants' assertions that Centurion Health and Centurion Group, Inc. are not proper parties to the suit. (ECF No. 99 at 2). The Centurion Defendants' letter states that Centurion Health "as a holding company, possesses no documents related to the provision of medical care pursuant to Centurion of Maryland, LLC's contract with DPSCS." *Id.* at 1. Additionally, the letter provides that "Centurion Group, Inc. is not a Centurion entity." *Id.* Consequently, the Centurion Defendants argue that discovery should only be required from Centurion of Maryland, the entity that contracted with the State of Maryland to provide the medical services at issue and the only entity that possesses relevant information. Plaintiff continues to pursue discovery from all Centurion Defendants, asserting that Centurion Group, Inc. and Centurion Health cannot avoid discovery because it is a party to the suit and did not move to dismiss. (ECF No. 102 at 1-2).

The Court certainly makes no determination at this juncture as to whether the other entities are proper parties to this action. Nonetheless, the Court finds that Plaintiff's discovery requests to Centurion Health and Centurion Group, Inc. would impose an unnecessary burden without any corresponding benefit to further the resolution of Plaintiff's claims. The Court declines to compel Centurion Health and Centurion Group, Inc.'s discovery when Centurion of Maryland, the contracting party with the State of Maryland, possesses the discoverable material in this case. To do so would frustrate this Court's interest in judicial efficiency. Therefore, such discovery is unreasonably cumulative and duplicative within the meaning of Rule 26(b)(2)(C)(i).

### C. Plaintiff's Rule 30(b)(6) and 30(b)(1) Deposition Notices to the Centurion Defendants

The final dispute between the parties concerns Plaintiff's 30(b)(6) depositions for each of the three Centurion Defendants and 30(b)(1) depositions of Defendants Schlottmann and LoPresti. Counsel for the Centurion Defendants opposes such discovery at this point of the litigation as the YesCare Defendants may be effectively uninsured due to YesCare's bankruptcy, which would leave them without representation at any upcoming depositions. (ECF No. 99 at 3). The Centurion Defendants ask the Court to stay the depositions until the YesCare Defendants have the opportunity obtain counsel in this case. *Id.* Plaintiff contends that YesCare's bankruptcy provides no basis to stay the depositions of the Centurion Defendants or Defendants Schlottman and LoPresti. (ECF No. 102 at 3).

Upon review of the parties' positions with respect to Plaintiff's requested depositions, the Court finds it prudent to stay resolution of Plaintiff's request to compel depositions pending Judge Hurson's determination of the YesCare Defendant's Motion to Stay. Should Judge Hurson grant the stay, resolution of the present dispute would be rendered moot. That notwithstanding, should Judge Hurson deny the Motion to Stay, the Court will grant Plaintiff's requested depositions of Centurion of Maryland, Defendant Schlottman, and Defendant LoPresti. However, the Court will not require Centurion Health and Centurion Group, Inc. to submit to Rule 30(b)(6) depositions. As explained in greater detail *supra*, Centurion of Maryland is the entity that holds the contract with the State of Maryland to provide medical care to incarcerated persons. To require the other Centurion Defendants to submit to Rule 30(b)(6) depositions would be unreasonably cumulative or duplicative as the information Plaintiff seeks can be obtained through Centurion of Maryland.

In the even that Judge Hurson denies the Motion to Stay, the Court instructs the parties to jointly propose a deposition schedule within fourteen (14) days of Judge Hurson's order. The Court recognizes the difficulties faced by the YesCare Defendants as a result of YesCare's bankruptcy petition and therefore encourages the parties to propose a schedule that affords YesCare Defendants sufficient time to obtain representation.

## IV. Conclusion

For the foregoing reasons, Centurion of Maryland shall, within forty-five days of the entry of this order supplement their responses to the Requests for Production of Documents and Interrogatories consistent with the rulings stated above. If that timing necessitates a reasonable extension of the discovery schedule, the parties should confer and make such a request to amend the scheduling order with the Court.

Notwithstanding its informal nature, this letter constitutes an order of the Court and should be docketed as such.

Sincerely yours,

/s/

J. Mark Coulson
United States Magistrate Judge